IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF IOWA

IN RE:                                )
                                      )    Chapter 7
BRIAN J. BARTZ                        )
                                      )    Bankruptcy No. 10-01897
        Debtor.                       )

**ORDER RE: REAFFIRMATION AGREEMENT BETWEEN
DEBTOR AND CITIZENS AUTO FINANCE**

This matter came before the Court on November 3, 2010 for hearing on Debtor's Reaffirmation Agreement with Citizens Auto Finance. Attorney J. Matthew Anderson appeared for Debtor Brian J. Bartz. After receiving statements from Debtor and his attorney the Court took the matter under advisement. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (O).

**STATEMENT OF THE CASE**

Debtor seeks to reaffirm a debt securing his 2009 Chevrolet Silverado pickup truck. According to Debtor's filed reaffirmation agreement, the presumption of undue hardship arises under 11 U.S.C. § 524(c)(6)(A). Debtor presented evidence of more consistent income and decreased expenses since the time he filed bankruptcy. The Court took this matter under advisement to consider whether to allow reaffirmation on an expensive vehicle with large monthly payments that will be made over a significant period of time. The Court finds that Debtor has failed to rebut the presumption of undue hardship. The Court now denies reaffirmation on this high-cost item.

**FINDINGS OF FACT**

Debtor is a carpenter/construction worker seeking to reaffirm a debt secured by a 2009 Chevrolet Silverado pickup truck. The amount of the debt is $26,038.55. It would be repaid at an annual fixed interest rate of 7.99%, with monthly payments of $447.78 for 73 months. Debtor did not include a market value of the vehicle. It is unclear whether Debtor has any equity in the vehicle.

Debtor purchased this vehicle new in 2009 after trading in his 2005 Chevrolet Silverado. He made the purchase almost exactly one year before filing for bankruptcy. Debtor testified that he needs this truck to carry his carpentry tools and to commute to work from his rural residence.

Debtor stated that his monthly expenses for health insurance and payroll taxes have decreased since he filed bankruptcy. He was previously a self-employed carpenter that had to carry the full amount of these expenses. His new employment as a full-time hourly worker produced these reductions. Despite these reductions, Debtor's reaffirmation agreement budget numbers still show a deficit of $321.86.

Initially, Debtor's attorney did not sign the attorney certification on the reaffirmation agreement provided for by § 524(c)(3) and § 524(k)(5)(A). At the hearing, Debtor's attorney indicated that he now supports Debtor's desire to reaffirm. Debtor's attorney noted that at the time the reaffirmation agreement was executed, Debtor had only been working at his new full-time job for one week. At the hearing, he noted that Debtor has maintained this full-time job for several months and the job had produced the expense reductions he and his client had hoped for. Because of this and the other expense reductions, Debtor's attorney decided to sign in support of Debtor's proposed agreement to reaffirm the truck debt.

In response to questions from the Court, Debtor's attorney argued that this truck was not a luxury item in spite of the high price. He argued that this truck provided necessary utility to the Debtor—reiterating points Debtor made. Debtor also argued that the truck enabled Debtor to transport his tools, which were necessary for his work, and provided reliable transportation to his job from his rural home.

## **CONCLUSIONS OF LAW**

One of the fundamental goals of the Bankruptcy Code is to provide debtors with a fresh start. See Grogan v. Garner, 498 U.S. 279, 286–87 (1991) ("This Court has certainly acknowledged that a central purpose of the Code is to provide a procedure by which certain insolvent debtors can reorder their affairs, make peace with their creditors, and enjoy 'a new opportunity in life with a clear field for future effort, unhampered by the pressure and discouragement of preexisting debt.'") (citing Local Loan Co. v. Hunt, 292 U.S. 234, 244 (1934)). The Code effectuates the fresh start by granting the "honest but unfortunate debtor" a discharge of certain debts. Grogan, 498 U.S. at 286; In re Pickerel, 433 B.R. 679, 683 (Bankr. N.D. Ohio, 2010). In this case, Debtors seek relief under chapter 7 of the Code. Section 727(a) provides that the court "shall grant the debtor a discharge" unless certain grounds exist that render debtor ineligible to receive a discharge. Regardless of whether or not an individual debtor is eligible to receive a discharge, § 523 lists specific types of debts that are not dischargeable.

If and when a discharge is entered in favor of the debtor, § 524(a)(2) provides that the discharge "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived." Despite this protection,

a debtor may voluntarily agree in writing to repay, or "reaffirm" a debt that would be dischargeable. Section 524(c) governs the enforceability of a reaffirmation agreement between the debtor and creditor. Section 524(c) allows a debtor to reaffirm an otherwise-dischargeable debt unless reaffirmation would pose an undue hardship on the debtor. In re Tarnowski, 2009 WL 424999 at *1 (Bankr. N.D. Iowa 2009) (citing In re Chim, 381 B.R. 191, 195 (Bankr. D. Md. 2008)). The Bankruptcy Code includes provisions aimed at ensuring that reaffirming debtors do not fall victim to coercive and deceptive actions by creditors and to make sure "that debtors understand the consequences of entering into such agreements." Id. (citing In re Schmidt, 397 B.R. 481, 482 (Bankr. W.D. Mo. 2008)). These include disclosures relating to the legal ramifications of reaffirmations. See 11 U.S.C. § 524(k).

    Reaffirming an obligation to repay a prepetition debt is contrary to the fresh start provisions of the Bankruptcy Code. See, e.g., In re Jamo, 283 F.3d 392, 398 (1st Cir. 2002); In re Getzoff, 180 B.R. 572, 574 (B.A.P. 9th Cir. 1995); In re Reed, 403 B.R. 102, 104 (Bankr. N.D. Okla. 2009); Pickerel, 433 B.R. at 683. Reaffirmation is an exception to the discharge provisions of the Code—an exception that is invoked by the debtor himself. Jamo, 283 F.3d at 398. As a result, courts must rigidly enforce the Code provisions governing the execution of reaffirmation agreements. See, e.g., In re Grisham, 436 B.R. 896, 900 (Bankr. N.D. Tex. 2010); In re Golladay, 391 B.R. 417, 421 (Bankr. C.D. Ill. 2008).

    If the debtor is not represented by an attorney during the course of negotiating the agreement, the court must hold a hearing to inform the debtor that the reaffirmation agreement is not required and describe the legal consequences of reaffirming debt. 11 U.S.C. § 524(d). The court may deny an unrepresented debtor's reaffirmation agreement if it concludes that

4

reaffirmation is not in the best interests of the debtor or poses an undue hardship. 11 U.S.C. § 524(c)(6).

If the debtor is represented by an attorney, as here, the debtor's attorney is required to sign a declaration stating that (1) the debtor was informed and entered the agreement voluntarily; (2) the debt does not impose an undue hardship; and (3) the attorney has explained the consequences of the reaffirmation and the effect of default. 11 U.S.C. § 524(c)(3).

The Bankruptcy Code specifically requires a hearing and court approval if the monthly payments on the reaffirmed debt exceed the debtor's net monthly income. 11 U.S.C. § 524(m)(1). In these circumstances, under the Code, a presumption exists that the reaffirmation agreement imposes an "undue hardship" to the debtor. Id. The debtor may rebut this presumption, in writing, by identifying alternative sources of income to the satisfaction of the court. Id. Bankruptcy courts have a duty to review reaffirmation agreements for undue hardship, even when the debtor's attorney confirms that the debtor is capable of paying the reaffirmed debt. In re Miller, 2007 WL 2413012, at *1 (Bankr. N.D. Iowa 2007) (citing In re Melendez, 224 B.R. 252, 260 (Bankr. D. Mass. 1998)). The debtor cannot overcome the presumption of undue hardship merely by showing that he needs a vehicle. In re Stevens, 365 B.R. 610, 612 (Bankr. E.D. Va. 2007).

Several courts have rejected reaffirmation agreements when the debtor failed to show that additional income is available to pay both existing monthly expenses and the reaffirmed debt. In re Payton, 338 B.R. 899, 904 (Bankr. D. N.M. 2006) (denying reaffirmation after finding that the debtor would be "underwater" by $314 per month); In re Husain, 364 B.R. 211, 217 (Bankr. E.D. Va. 2007) (finding additional income insufficient to overcome presumption when the debtor would still have a deficit of $3,000 per month).

5

"When determining whether a reaffirmation agreement imposes an undue hardship, there are several relevant factors a court may consider . . . ." In re Strong, 232 B.R. 921, 924 (Bankr. E.D. Tenn. 1999). Those factors include: "the terms of the debt to be reaffirmed, **whether the goods that the debtor wishes to retain are necessary**, the risk of repossession if the debtor decides not to reaffirm the debt, and the replacement value of the goods compared to the amount of debt to be reaffirmed." Id. (emphasis added) (citing In re Melendez, 224 B.R. 252, 261 (Bankr. D. Mass. 1998). As this Court has previously noted: "The appropriate financial inquiry ascertains whether the debtors' expenses exceeded their income and whether the reaffirmed debt is secured by a **necessary item**." In re Miller, 2007 WL 2413012 at *1 (Bankr. N.D. Iowa 2007) (emphasis added) (citing In re Vargas, 257 B.R. 157, 166 (Bankr. D. N.H. 2001)). Courts "should not be in the business of approving reaffirmation agreements where the debt is something the Debtor cannot afford." In re Stillwell, 348 B.R. 578, 582 (Bankr. N.D. Okla. 2006).

This Court has several times denied debtor's attempts to reaffirm debts collateralized by security interest in luxury or high-cost items. See In re Honkomp, 416 B.R. 647 (Bankr. N.D. Iowa 2009); Tarnowski, 2009 WL 424999; Miller, 2007 WL 2413012; In re Vaupel, 2007 WL 2609786 (Bankr. N.D. Iowa 2007). In Tarnowski, the Court specifically noted that "although an **automobile may be necessary** for future employment, **there is no showing made that a luxury car** [BMW] **is required**." 2009 WL 424999 at *2 (emphasis added). The Court noted that in denying reaffirmation that debtors had "not shown this Court that they have exhausted the less expensive alternatives than reaffirming the debt on a luxury vehicle." Id.

In Miller, this Court was asked to approve a debtor's attempt to reaffirm a $24,302.71 debt secured by a Harley-Davidson motorcycle. The Court denied reaffirmation based in part on

6

its conclusion that "this motorcycle is a **luxury** and **not a necessity**." Id. (emphasis added). In Honkomp, the court addressed a motion by the United States Trustee to dismiss the case for substantial abuse under § 707(b) based primarily on debtors' attempts to reaffirm debts on luxury items while discharging debts to other unsecured creditors. While there is no issue here regarding substantial abuse or dismissal in this case, the Court's observations on the reaffirmation of luxury debts bear on the matter before this Court. This Court first noted in Honkomp that "Courts have dismissed cases under the totality of the circumstances . . . in situations where debtors make large payments on luxury items." Id. at 650. This Court cited with approval another court's observation that "the debtors, by allocating almost $1,300 to service debt on two automobiles 'have gone a long way in demonstrating that they have some ability to repay their creditors'." Id. (quoting Brenneman, 397 B.R. at 874). After reciting that analysis, this Court noted that it "will not allow the reaffirmation of debt secured by luxury goods." Id. This Court went on to note that "debtors who wish to retain luxury goods rather than pay their legitimate creditors are not the type of honest but unfortunate debtor who should benefit from Chapter 7 relief." Id.

This is consistent with the observations of many other courts. To borrow the words of one court:

> Bankruptcy is about "fresh starts" and new beginnings. It is about belt-tightening and shedding past bad habits. Too often, a reaffirmation agreement will reveal that someone just does not comprehend this, and wants to go forward in a manner that will impair his fresh start and perpetuate bad habits from the past.

Grisham, 436 B.R. at 906 (denying reaffirmation on a debt secured by a truck where debtor failed to rebut the presumption of undue hardship). As another court noted, it is not appropriate for debtors to reaffirm "their debt on these luxury items rather than following the expectation

7

that 'when seeking bankruptcy relief, debtors may be expected to do some belt tightening, including, where necessary, **foregoing the reaffirmation of those secured debts which are not reasonably necessary** for the maintenance and support of the debtor and his family.'" In re Deutscher, 419 B.R. 42, 46 (Bankr. N.D. Ill. 2009) (emphasis added) (citing In re Harter, 397 B.R. 860, 864 (Bankr. N.D. Ohio 2008)). See also Brenneman, 397 B.R. at 874 ("Bankruptcy is meant to provide a debtor with a fresh start, but not a head start . . . the reaffirmation process in a Chapter 7 bankruptcy was not meant to be used as a device by which debtors could retain unnecessary property to the detriment of their unsecured creditors.").

## ANALYSIS

As stated on his reaffirmation agreement, Debtor's monthly expenses exceed his monthly income by $321.86. The record shows that this deficit exists even after taking into account all the evidence presented by Debtor and his attorney regarding the decreases in his monthly tax and health insurance expenses. The debt that Debtor proposes to reaffirm is substantial not only in its amount but in the period over which he will repay it—more than 6 years. Debtor did not show whether he has any equity in the vehicle. Debtor provided no evidence that he has tried to look for a more modest truck that can get him from his house to his job and carry his tools. See Tarnowski, 2009 WL 424999 at *2. Additionally, the record shows that Debtor traded in a 2005 Silverado truck (itself a nice vehicle) in order to upgrade to a brand new model. There is no evidence that this upgrade in vehicle came from necessity of any type.

The Court does not take lightly the fact that Debtor's counsel—an experienced bankruptcy attorney—signed off on the reaffirmation agreement. Nor does the Court entirely disregard his argument that the truck is a necessity and not a luxury item. However, as one court

8

noted "certain kinds of assets may not normally be viewed as a luxury, but will acquire a luxury component by reason of their unusual character and [or] cost." In re Boyle, 412 B.R. 108, 113 (Bankr. W.D.N.Y. 2009). For example, one court has found an attempt to reaffirm on a Chevy Suburban, also an expensive truck, to have crossed the line from necessity to luxury. In re Castellaw, 401 B.R. 223, 228 (granting the United States Trustee's motion to dismiss for abuse under § 707(b)(1) and (b)(3), and stating that debtors' Chevrolet Suburban "was a luxury item by any reasonable measure"). Another court denied an attempt to reaffirm on a Dodge Nitro truck where the debtor could not overcome the presumption that paying the truck loan created an undue hardship. Grisham, 438 B.R. at 906 (denying reaffirmation agreement as unduly burdensome because debtor had no equity in the truck, the applicable interest rate was 17.5%, the debtor had 71 more months of payments on the vehicle, monthly net income was -$1,091). This Court concludes that Debtor's upgrade to a new and expensive Chevy Silverado has also crossed that line. Debtor has failed to rebut the presumption that reaffirmation of the debt in question will impose an undue hardship.

In reaching this conclusion, the Court also would like to point out the interplay between the reaffirmation analysis and the analysis under § 707(b) referred to above. As noted, several courts, including this one, have faced motions for dismissal of debtor's cases for substantial abuse based on attempts to reaffirm expensive or luxury item debts. Dismissal is often premised on the idea that it is an abuse of the system to allow a debtor to discharge unsecured debts, while being allowed to keep and continue to pay on those high expense items. While this discrete determination on reaffirmation does not itself call for the "substantial abuse" analysis, it does implicate similar reasoning. The Court's endorsement of a reaffirmation agreement on a high cost item is essentially an endorsement or approval of the retention of such items at the expense

9

of unsecured creditors. The Court believes that its denial of reaffirmation in such situations is in keeping with—and a less harsh sanction than—dismissal under § 707(b).

**WHEREFORE**, approval of the Reaffirmation Agreement between Debtor and Citizens Automobile Finance Inc. is DENIED.

Dated and Entered: February 17, 2011

_____
THAD J. COLLINS
CHIEF BANKRUPTCY JUDGE